Peck, J.
It appears from the record, that the court below •found in favor of the defendant, because it was of the opinion, that the statute authorizing an assessment of the cost •of improving a street in a city, upon the lots and lands abutting thereon, under which the orders and assessments stated in the findings were made, is unconstitutional, for the reason that “ no limitation was [is] contained therein, as to the •amount of said assessments which said council ordered to be made.”
The assessments were made under the provisions of the •towns’ and cities’ act of May 3, 1852,.and the act amendatory thereto, passed March 11, 1853: (Swan R. S. of 1854, '955 et seq.): and it is claimed that these acts, so far as they authorize such assessments, are in contravention of section •6, article 13, of the constitution of 1851, which reads as follows :
“ Sec. 6. The general assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such power.”
The towns’ and cities’ acts, above referred to, and from which the city council derived their sole power to make such .assessments, were passed under this section, in partial fulfillment of its requirement, and confer, it is claimed, upon cities .an unrestricted power of making such assessments. Were this true, it might be questionable whether the courts could, for that reason, ho,Id the grant of power to be void. The constitution clearly imposes a duty upon the legislature, but does not direct when or how it shall be exercised. Speaking of this provision and the duty thereby enjoined, Judge Ranney, in Hill v. Higdon, 5 Ohio St. Rep. 248, says, “a failure to perform this duty, may be of very serious import, but lays no foundation for judicial correction.”
Be this as it may, the section, while it imposes the duty, leaves to the legislature the power to determine the mode and measure of the restriction to be imposed; and we find that ;,the legislature was not unmindful of this duty, and did not *639 evade its performance. The statutes referred to, do impose “restrictions” upon this power of assessment, which, if fairly and truly observed, will, to some extent at least, prevent its abuse. This restriction is to be found in the latter clause of section 92 of the same act, which provides that no improvement or repair of a street or highway, the cost of which is to be assessed upon the owners, shall be directed without the ■concurrence of two thirds of the members elected to the -council, or unless two thirds of the owners to be charged, .shall petition in writing therefor.
This may be said to be a very imperfect protection, and in -some cases, will doubtless prove to be so; but it is calculated and designed, by the unanimity, or the publicity it requires, to prevent any flagrant abuses of the power. Such is plainly •its object; and we know of no rights conferred upon courts thus to interfere with the exercise of a legislative discretion, which the constitution has delegated to the lawmaking power.
It would seem from the finding of the court, that it was supposed, not only that there must be a restriction upon the power of assessment, but the restriction must be as to the ■amount to be assessed; founded, perhaps, upon its collocation with “taxation, borrowing money, contracting debts, and loaning credit,” and as to which, the most obvious restriction would be in amount or percentage. We think, however, that the legislature was invested with the power to determine the mode and measure of the restriction proper to be imposed.
The power to make such assessments, was not restricted under the old constitution; and the framers of the new were apprehensive it would be, if it had not been abused; and they accordingly made it the duty of future legislatures to restrict its exercise.
It was a useful, and in some cases, a necessary power; and sound policy would indicate that the work of restriction should be progressive and not radical in the first instance. The first legislature began by enacting section 92, referred to above, which placed restrictions upon the issuance of the order to improve a street; and, in 1856, the legislature, finding that restriction insufficient, limited the assessment to one half *640 the value of the property, after the improvement was made. (Swan & Oritchfield’s Stat. 1546.) Whether this last restriction is too much or too little, time only can determine, and any other or further remedy must be left where, we conceive, the constitution has placed it, in the prudence and sagacity of the law making power.
The result to which we have come is, that the statutes reg ulating the power of assessment by municipal corporations, for the improvement of streets, in force when the street iu question was improved, were not unconstitutional, and should not have been so adjudged.
The cause was determined in the court below solely upon this ground; but the counsel for the defendant has argued, that the judgment can and should be sustained for other and-sufficient reasons, based upon the facts ‘found by the court— a defect of power in the street superintendent to contract for labor beyond the funds in his hands, arising from assessments actually collected, and an agreement by plaintiff to look to that fund alone for his compensation. But the facts found by the court are not such as enable us to arrive at a satisfactory conclusion upon either point. We therefore leave them, without expressing any opinion thereon, to be presented hereafter, if it should become necessary in the further progress of the cause.
The. judgment of the district court and the court of common pleas herein, are reversed, and the cause remanded to the court of common pleas for further proceedings.
Scott, C.J., and Sutliff, Gholson and Brinkerhoff, JJ., concurred.